The plaintiff, Barbara Swift, appeals from a judgment entered by the Montgomery Circuit Court in favor of the defendant, Frank A. Gregory, as Administrative Director of Courts for the State of Alabama (hereinafter "the Director"). We affirm.
Swift served as the register[1] of the Calhoun Circuit Court from February 23, 1975, until September 30, 1996. During her tenure, she elected to participate in the supernumerary program (§ 12-17-140 et seq., Ala. Code 1975).[2] In 1996, Swift filed a declaration of intention to assume supernumerary status because of a permanent disability. Swift furnished certifications from three physicians stating that she is permanently disabled and incapable of carrying out the duties of her position.
The Director denied Swift's request for supernumerary status because she was not yet 55 years old.[3] He contends that § 12-17-140
requires that a clerk or register be at least age 55 to assume supernumerary status. Swift sued the Director in the Montgomery Circuit Court, asking the court to hold that § 12-17-140 permitted her to be named as a supernumerary register, on the ground of her permanent disability and thus be entitled to be paid her annual salary, even though she has not reached the age of 55. The parties agreed to submit the matter on the pleadings and the briefs. The trial court entered a judgment in favor of the Director.
The pertinent portion of § 12-17-140 states:
 "(a) Any clerk or register of the circuit court, serving on October 1, 1976, or clerk elected or appointed in any county of the State of Alabama:
 "(1) Who has served as much as five years as a circuit clerk or register and who has become permanently, physically or mentally unable to carry out the duties of the office on a full-time basis, proof of such disability being made by a certificate of three reputable physicians; [or]
". . . .
 "(5) Who has served for not less than 18 years or three full terms as a circuit clerk or register;
 "may elect to become a supernumerary clerk of the circuit court or supernumerary register of the circuit court of the county in which said clerk or register has served as such official by filing a written declaration to that effect with the Administrative Director of Courts at least 30 days prior to the time said clerk or register desires to become a supernumerary official. . . . *Page 1099 
 "The provisions of this division[4] shall apply only to those persons who are 55 years of age or older and who are in office on October 1, 1976, or who may thereafter become eligible under its provisions."
(Emphasis added.)
The statute codified at § 12-17-140, as it was originally enacted by the Legislature, read:
 "Any clerk or register of the circuit court, serving when this article becomes law, or clerks elected or appointed, in any county of the state of Alabama:
 "(a) who has served as much as five years as a circuit clerk or register and who has become permanently, physically or mentally, unable to carry out the duties of the office on a full-time basis, proof of such disability being made by a certificate of three reputable physicians; or
". . . .
 "(e) who has served for not less than eighteen years or three full terms, as a circuit clerk or register; may elect to become a supernumerary clerk of the circuit court or supernumerary register of the circuit court, of the county in which said clerk or register has served as such official by filing a written declaration to that effect with the administrative director of courts, at least thirty (30) days prior to the time said clerk or register desires to become a supernumerary official. If the administrative director of courts shall find that such applicant is qualified under any of the subdivisions (a) through (e) hereinabove set forth, a commission as supernumerary clerk of the circuit court or register of such court for the county in which he has served, shall thereupon be issued to such applicant by the secretary of state. The provisions herein shall apply only to those persons who are fifty-five (55) years of age or older and who are in office at the time of the passage of this article or who may thereafter become eligible under its provisions."
Act No. 1205, § 7-112, 1975 Ala. Acts 2384, 2463 (adopted Oct. 10, 1975) (emphasis added).
The final sentence quoted above from § 7-112(5) of Act No. 1205, the sentence containing the 55-years-of-age requirement, appears only in the subsection dealing with retirement based on 18 years of service as a register or clerk. However, when the Act was codified, the sentence containing the age requirement was moved to an entirely separate paragraph. Also, the reference to "provisions herein" in § 7-112(5) of Act No. 1205 became "provisions of this division" in § 12-17-140.
Swift argues that the Legislature, in the original Act, intended for the age restriction to apply only to subsection (5), dealing with retirement after 18 years of service because, she says, it is illogical to deny supernumerary status on the basis of the age restriction when an applicant is determined to be disabled — an involuntary status. She contends that the codification of the Act results in an omission that the Legislature did not intend, an omission that leaves a disabled clerk or register with nothing until she reaches the age of 55.
We cannot agree with Swift's contention that the Legislature did not intend for the changes made from the provisions *Page 1100 
of the original Act in § 7-112 to the codified statute (§12-17-140) to be effective. Once the Code Commission modifies an act and the Legislature thereafter adopts a Code containing the modification, the modification has the force of law.
 "It is the settled law of this state that the Code of Alabama . . . is not a mere compilation of the laws previously existing, but is a body of laws, duly enacted, so that laws, which previously existed, ceased to be law when omitted from [the] Code, and additions, which appear therein, become the law from the approval of the Act adopting the Code."
State v. Towery, 143 Ala. 48, 49, 39 So. 309, 309 (1905).
In Smith v. State, 223 Ala. 346, 136 So. 270 (1931), the defendant was convicted of giving false weights and measures in the sale of gasoline. The statute proscribing this activity was found in the Agricultural Code of 1927. The 1927 Code version of the statute contained no "intent" element, even though the same provision as it appeared in a 1923 act regarding false weights and measurements had contained the word "knowingly." The manuscript prepared by the codifier eliminated the word "knowingly." The Legislature adopted the manuscript prepared by the codifier and approved by the joint commission. This Court held that the adoption of the Code, including the alteration injected by the codifier, changed the statute to the form used in the later edition of the Code.
Additionally, the modifications to § 12-17-140(a), as it is codified, must be evaluated under the rules of statutory construction.
 "The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."
IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992).
The codified statute, however harsh in its result, is plain and unambiguous. Section 12-17-140(a)(1) provides that a register may elect to become a supernumerary register if: (1) she was serving on October 1, 1976; (2) she has served at least five years; (3) she has become permanently unable, physically or mentally, to carry out her duties of the office; and (4) she has provided proper proof of the disability. Swift has fulfilled each of these requirements.
Nevertheless, the last paragraph of subsection (a) applies generally to all subparts of § 12-17-140(a). The sentence appearing immediately before that last paragraph refers to a "find[ing by the Administrative Director of Courts] that [an] applicant is qualified under any of [the]subdivisions (1) through (5) of this section." § 12-17-140(a) (emphasis added). The reference to "subdivision (1) through (5)" indicates that this paragraph modifies each of the subsections. A subsequent paragraph without reference to a particular subsection, like the paragraph in dispute here, would also apply to each of the subsections.
In his reply brief to the trial court, the Director contended that "[t]he statute at issue is unambiguous [and that] this issue has been addressed by both the Alabama Attorney General's Office [in opinions of the attorney general], and the Examiner of *Page 1101 
Public Accounts [in a letter]."[5] These documents (the opinions and the letter) specifically address the issue of whether the age requirement of 55 years applies to clerks and registers seeking to assume supernumerary status based on disability. Each interprets the statute as being conclusive of that issue and determines that supernumerary status based on disability should be denied if the applicant has not attained age 55. The Director relies on these documents as a basis for his contention that Swift "is prohibited from taking supernumerary status until her 55th birthday." While we are not bound by opinions of the attorney general or letters of the examiner of public accounts, we find them persuasive in this case. We further note that when the Legislature revisited § 12-17-140 in 1976 and 1989, it amended the statute significantly, but did not change the section regarding the age restriction and disability.
The present subsections (b) and (c) were added to § 12-17-140 in 1976 and 1989, respectively. These sections are somewhat similar (subsection (b) applying to clerks and subsection (c) applying to registers); subsection (c) provides that a register "who has served at least 23 years shall be eligible for supernumerary status at any time notwithstanding any provisions of this title, provided he has paid contributions into the supernumerary fund for the maximum number of years required." These subsections do not mandate a minimum age for eligibility under the supernumerary program. These additions to the statute give further support for the age requirement in § 12-17-140(a)(1); they show that the Legislature was quite capable of creating an eligibility for retirement that functioned regardless of the age of the applicant.
Clearly the age-55 requirement for disabled registers applies to §12-17-140(a)(1), as codified. Therefore, Swift is not presently eligible for supernumerary status based on her disability (see n. 3). If, as Swift argues, the Legislature did not intend such a harsh result, then the Legislature can change the language of the statute so that the age restriction does not apply in the case of a disability, but only the Legislature can do that. The judgment of the trial court is affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
[1] The office of register first existed in the former courts of equity, but it has now been abolished. However, one holding the position of register in a particular county at the time of the abolition of the office was allowed to continue serving as register in that same county until a vacancy occurred in the office.
[2] The supernumerary program was created because, by constitutional provision, Alabama historically denied the Legislature the authority to provide for retirement benefits for state officers. The Legislature created certain supernumerary positions for officials in order to compensate the officers for their service to the State. Johnson v. Boardof Employees Retirement Sys. of Alabama, 740 So.2d 999, 1003 (Ala. 1999).
[3] Swift's date of birth was December 16, 1945.
[4] Section 12-17-140, Ala. Code 1975, appears in Chapter 17, "Circuit and District Court Personnel," Article 4, "Circuit Clerks and Registers," Division 4, "Supernumerary Clerks and Registers."
[5] The Director cites the following documents: Op. Ala. Att'y Gen., No. 77-00345 (Sept. 7, 1977); Op. Ala. Att'y Gen., No. 86-00063 (Nov. 27, 1985) (issued to then Administrative Director of Courts Allen Tapley); Op. Ala. Att'y Gen., No. 93-00327 (Aug. 24, 1993) (issued to then Director Oliver Gilmore); and to a letter from the Examiner of Public Accounts dated April 20, 1993, to then Director Oliver Gilmore.